UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ALBERT D. BOLT

      Plaintiff,

  v.

MERRIMACK PHARMACEUTICALS, INC.

      Defendant.

NO. CIV. S-04-0893 WBS DAD

MEMORANDUM AND ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT

----oo0oo----

      Plaintiff Albert Bolt filed suit seeking a declaratory judgment that the net worth of defendant Merrimack Pharmaceuticals, Inc. was over $5,000,000 as of December 31, 2001. This court has jurisdiction based on the diversity of citizenship of the parties. Both parties move for summary judgment.

I. Factual and Procedural Background

      Albert Bolt has owned 52,488 shares of defendant's Series A Non-Convertible Preferred Stock ("Series A shares") since before 2001. (Bolt Decl. ¶ 2). He wishes to redeem those shares for cash. (Bolt Decl. ¶ 3). According to the

1

1  "Description of Capital Stock," Bolt's 52,488 shares are
2  redeemable for $10 each "if the net worth of the Corporation,
3  determined in accordance with generally accepted accounting
4  principles and as shown on the balance sheet of the Corporation
5  as of the end of the fiscal quarter then most recently ended,
6  equals or exceeds five million dollars." (Warne Decl. Ex. G ¶¶
7  B5.2, B5.3). Plaintiff requested redemption in writing, as he
8  was required to do, on March 28, 2002. (Bolt Decl. ¶ 3; Warne
9  Decl. Ex. G (Description of Capital Stock) ¶ 5.2). Defendant
10 denied plaintiff's redemption request in a letter dated June 13,
11 2002. (Warne Decl. Ex. G).

12         During 2001, defendant issued 3,315,201 shares of
13 Series B convertible preferred stock ("Series B shares") worth
14 $11,915,267. (Braunstein Decl. Ex. 1 (audit & financial
15 statements) at 2, 4). Under the articles of organization, upon a
16 "deemed liquidation" event, the Series B shareholders are
17 entitled to redeem those shares for cash or for common stock.
18 (Scibetta Decl. Ex. 1 (articles of organization) § C4.2). A
19 "deemed liquidation" event is defined as the occurrence of

> (i) a consolidation of the Corporation with, or merger of
> the Corporation with or into, another business organization,
> other than a merger with an affiliate of the Corporation or
> a merger in which the Corporation is the surviving
> Corporation and the stockholders of the Corporation prior to
> such merger continue to hold a majority of the voting power,
> or (ii) the sale of all or substantially all of the
> Corporation's business assets.

25 (Id.). These Series B shares are at the heart of this litigation
26 because if the $11,915,267 earned from their sale is considered
27 equity, the net worth of defendant was well over $5,000,000 as of
28 December 31, 2001. If, on the other hand, the $11,915,267 is

2

1  considered to be a liability, the net worth of defendant was
2  substantially less than $5,000,000.
3         On May 2, 2002, PricewaterhouseCoopers LLP ("PwC")
4  completed an audit of defendant's December 31, 2001 financial
5  statements "in accordance with auditing standards generally
6  accepted in the United States." (Braunstein Decl. Ex. 1 (audit &
7  financial statements)). PwC found that the balance sheet
8  attached to PwC's letter confirming completion of the audit
9  "presents fairly, in all material respects, the financial
10 position of Merrimack Pharmaceuticals, Inc. at December 31,
11 2001." (Id.).
12        The balance sheet is shown on the next page.

**Merrimack Pharmaceuticals, Inc.**
**(A Development Stage Enterprise)**
**Balance Sheet**
**December 31, 2001**

| | |
|---|---:|
| **Assets** | |
| **Current assets:** | |
| Cash and cash equivalents | $ 7,957,707 |
| Subscription receivable | 50,000 |
| Prepaid expenses and other current assets | 28,238 |
| Total current assets | 8,035,945 |
| Property and equipment, net | 47,202 |
| Intangible assets | 1,683,006 |
| Goodwill | 1,562,116 |
| Other assets | 2,801 |
| Total assets | $ 11,331,070 |
| **Liabilities, Redeemable Convertible Preferred Stock and Stockholders' Deficit** | |
| **Current liabilities:** | |
| Accounts payable | $ 328,991 |
| Accrued expenses | 572,259 |
| Total current liabilities | 901,250 |
| Contractual obligations (Note 3) | 368,980 |
| Total liabilities | 1,270,230 |
| Commitments (Note 8) | – |
| **Redeemable convertible preferred stock:** | |
| Series A redeemable preferred stock, $10 par value; authorized 86,000 shares, issued and outstanding 54,838 shares (liquidation preference of $548,380) | 548,380 |
| Series B convertible preferred stock, no par value; authorized 6,000,000 shares; issued and outstanding 3,315,201 shares (liquidation preference of $14,586,884) | 11,915,267 |
| Total redeemable convertible preferred stock | 12,463,647 |
| **Stockholders' deficit:** | |
| Common stock, no par value, authorized 20,000,000 shares; issued and outstanding 6,728,960 shares in 2001 | 8,589,902 |
| Additional paid in capital | 3,817,442 |
| Deferred compensation | (3,578,672) |
| Accumulated deficit | (11,231,479) |
| Total stockholders' deficit | (2,402,807) |
| Total liabilities, redeemable convertible preferred stock and stockholders' deficit | $ 11,331,070 |

The accompanying notes are an integral part of these financial statements.

1    Two arithmetical observations about the above numbers are in order.  "Total liabilities" subtracted from "Total assets" equals $10,060,840.  "Total stockholders' deficit" added to the "Total redeemable convertible preferred stock" equals the same figure: $10,060,840.

The term "net worth" does not appear on the balance sheet.  Plaintiff contends that "net worth" is computed by subtracting liabilities from assets.  Defendant contends that the $11,915,267 generated from the sale of Series B shares should be treated as a liability, and that therefore the net worth of defendant as reflected in the balance sheet was ($2,402,807).[1]

Both parties move for summary judgment.

II. Discussion

   A. Summary Judgment Standard

The court must grant summary judgment to a moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party adverse to a motion for summary judgment may not simply deny generally the pleadings of the movant; the adverse party must designate "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  Simply put, "a summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."  Taylor

---

[1] The court uses parentheses to denote negative amounts.

5

v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). The non-moving party must show more than a mere "metaphysical doubt" as to the material facts. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

B. <u>As a Matter of Law, Defendant's Net Worth on December 31, 2001 Surpassed $5,000,000</u>

The question before this court is whether, as of December 31, 2001, "the net worth of the Corporation, determined in accordance with generally accepted accounting principles and as shown on the balance sheet of the Corporation as of the end of the fiscal quarter then most recently ended, equals or exceeds five million dollars." There are no disputed facts; the court is only called upon to review the balance sheet to determine the net worth of defendant according to the balance sheet and generally accepted accounting principles.

As defendant corporation is formed under the laws of Massachusetts, the court applies Massachusetts law to this dispute. See Order of United Commercial Travelers of Am. v. Wolfe, 331 U.S. 586, 614 (1947)(full faith and credit clause requires controlling effect to be given to the law of the state of incorporation in interpreting and determining the enforcibility of rights under articles of incorporation and by-laws).

If a contract is unambiguous, its interpretation is a matter of law that is appropriate for the court to decide on summary judgment. Seaco Ins. Co. v. Barbosa, 761 N.E.2d 946, 951 (Mass. 2002); see also Brown v. Little, Brown & Co., 168 N.E. 521, 527 (Mass. 1929)(interpreting language contained in

6

amendments to corporate by-laws).  This case is similar to one in which contract interpretation is required in that the court is called upon to interpret the written balance sheet.[2]  See Hercules v. United States, 626 F.2d 832, 835 (Ct. Cl. 1980)("the application of accounting rules to a finite problem raises an issue or contract interpretation, which is an issue of law").  The court finds that the balance sheet unambiguously shows that defendant had a net worth of greater than $5,000,000.

        The court starts with the common sense notion that net worth of a company is computed by subtracting the total liabilities from the total assets.  See Black's Law Dictionary 1062 (7th ed. 1999)(defining "net worth" as "[a] measure of one's wealth, usu. calculated as the excess of total assets over total liabilities"); see also Overnite Transp. Co. v. Comm'r of Revenue, 764 N.E.2d 363, 365 n.1 (Mass. App. Ct. 2002)("As used in this discussion, 'net worth' means the book value of [plaintiff's] total assets less its liabilities"); Nat'l Ass'n of Mfrs. v. Dep't of Labor, 159 F.3d 597, 600 n.1 (D.C. Cir. 1998)(net worth "calculated by subtracting total liabilities from total assets").

        Nothing in the articles of organization or any other corporate document defines "net worth" to mean anything different than total liabilities subtracted from total assets.  "Where the language of a contract is not ambiguous, the words will be given

---

[2] Thus, defendant's allegation that plaintiff admitted that the balance sheet shows a negative net worth is entitled to no weight.  The court interprets the contract, analyzes the balance sheet, and applies generally accepted accounting principles.  How plaintiff reads the balance sheet has no legal effect.

7

their plain meaning, or their well established meaning." <u>City of Haverhill v. George Brox, Inc.</u>, 716 N.E.2d 138, 141 (Mass. App. Ct. 1999)(citations omitted).

The balance sheet at issue has an entry entitled "Total assets" and an entry labeled "Total liabilities."  The court gives the term "Total" its common meaning as well – that is, "Total liabilities" includes all liabilities without exception, and "Total assets" includes all assets without exception. Subtracting the total liabilities of $1,270,230 from the total assets of $11,331,070, the court determines that the "net worth" of the company as of December 31, 2001, at least according to the plain meaning accorded that term, is greater than $5,000,000. The court next considers defendant's arguments against that plain meaning.

1. <u>Defendant's argument that "net worth" is synonymous with "Total stockholders' deficit"</u>

Defendant argues that "'net worth' has been construed in this circuit and elsewhere to be synonymous with shareholder's equity," (Def.'s Mem. in Supp. of Mot. for Summ. J. at 9), and that the line entry for "Total stockholders' deficit" in the balance sheet is therefore synonymous with "net worth."

Plaintiff accurately cites cases in which the Ninth Circuit and other courts have stated that net worth is equal to stockholders' equity. <u>See, e.g.</u>, <u>Howard v. Everex Sys., Inc.</u>, 228 F.3d 1057, 1064 (9th Cir. 2000)("[A]t the end of the fourth quarter of FY1991, Everex had a net worth <u>i.e.</u>, shareholder equity of $92.1 million."); <u>Nelson v. O.E. Serwold</u>, 687 F.2d 278, 280 (9th Cir. 1982)("the actual book value of the stock,

8

determined by dividing the stockholders' equity (the net worth of the corporation) by the number of issued and outstanding shares . . ."); Orjias v. Stevenson, 31 F.3d 995, 1014 (10th Cir. 1994)("the award is less than 0.2% of the net worth (stockholders' equity) . . .").

The court does not quibble with defendant's cases that note that shareholder equity is equivalent to net worth. However, net worth is equal to stockholders' equity only if all types of instruments properly classified as equity are considered as equity. None of the cases defendant cites states that net worth is not equivalent to liabilities subtracted from assets, and there is Ninth Circuit precedent squarely on point stating that net worth is equal to total liabilities subtracted from total assets. See Am. Pac. Concrete Pipe Co., Inc. v. NLRB, 788 F.2d 586 (9th Cir. 1986). In that case, the court was called upon to interpret an attorneys' fees provision under the Equal Access to Justice Act that only allowed fees to be awarded to a business association if that association had a net worth of $5,000,000 or less. Id.; see 28 U.S.C. § 2412(d)(2)(B)(1984).[3] The court first noted that "'net worth' is not defined in the legislation." Amercian Pacific, 788 F.2d at 590. The court held that, in defining net worth, generally accepted accounting principles would apply. Id. at 591("We agree with the Seventh

---

[3] "[P]arty means (i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed, (ii) a sole owner of an unincorporated business, or a partnership, corporation, association, or organization whose net worth did not exceed $5,000,000 at the time the civil action was filed . . ." 28 U.S.C. § 2412(d)(2)(B)(1984).

9

1  Circuit.  It is unreasonable to conclude . . . that Congress
2  could have intended that generally accepted accounting principles
3  would not apply.").  Applying those principles, the court held
4  that "net worth is calculated by subtracting total liabilities
5  from total assets."  Id. at 590(citation omitted).

6  Not only is there case law defining net worth as
7  liabilities subtracted from assets, there is also a statement
8  from the Financial Accounting Standards Board noting that
9  shareholders' equity is equal to total liabilities subtracted
10 from total assets.  Financial Accounting Standards Board,
11 Statement of Financial Accounting Concept No. 6: Elements of
12 Financial Statements ¶ 60 (1985), available at
13 http://www.fasb.org/pdf/con6.pdf("equity is the same as net
14 assets, the difference between the enterprise's assets and its
15 liabilities").

16 Defendant has cited no case in which net worth is
17 defined as only permanent stockholders' equity (i.e., equity that
18 can never be converted no matter what conditions occur).
19 Defendant should not be permitted to pick and choose which series
20 of shares it will count towards stockholders' equity, and which
21 series it will not.  Defendant misreads the "Total stockholders'
22 deficit" line to equate to the complete representation of equity
23 in all types of shares.  On its face, the balance sheet refutes
24 defendant's reading.  The balance sheet divides shareholders'
25 equity into two categories.  The first category, labeled "Total
26 redeemable convertible preferred stock," is made up of shares
27 (equity) that can be converted upon the occurrence of conditions
28 not certain to occur.  Shareholders in this category hold shares

10

1 valued at $12,463,647.  The second category contained <u>within</u>
2 total shareholders' equity is made up of shares that are not
3 redeemable or convertible and is valued at ($2,402,807).
4 Defendant misreads this second category as the complete picture
5 of all shareholders' equity.  When the dollar amounts of <u>all</u>
6 types of shares are added together, the sum equals the dollar
7 amount arrived at by subtracting total liabilities from total
8 assets.

9       In conclusion, the balance sheet clearly reflects that
10 the "net worth" of defendant is above $5,000,000.

11       2. <u>Defendant's argument that Series B shares have the</u>
12 <u>same effect as a liability</u>

13       Generally accepted accounting principles require that
14 financial instruments be classified on a balance sheet as an
15 asset, liability, or equity:

> Because Concepts Statement 6 does not accommodate classification of items outside the elements of assets, liabilities, and equity . . . the Board concluded that presentation of those items [with characteristics of both liability and equity] between the liabilities section and the equity section of the statement of financial position should be prohibited.

20 Financial Accounting Standards Board, Statement of Financial
21 Accounting Standards No. 150: Accounting for Certain Financial
22 Instruments with Characteristics of both Liabilities and Equity
23 ¶¶ B56, B57 (2003)("FAS 150").  Therefore, the Series B shares
24 must be classified as either an asset, a liability, or equity.
25 Defendant's argument that the Series B shares should be
26 classified outside those categories is an argument against
27 generally accepted accounting principles.

28       Defendant argues that the Series B shares have the same

11

1  effect as a liability, even if they are not classified as such.
2  Defendant cites the International Accounting Standards Board's
3  ("IASB") International Accounting Standard 32 ("IAS") and the
4  Financial Accounting Standards Board's ("FASB") Concepts
5  Statement 6 for this proposition.  Under IAS 32:
6      a preference share that provides for mandatory redemption by
       the issuer for a fixed or determinable amount at a fixed or
7      determinable future date, or gives the holder the right to
       require the issuer to redeem the instrument at or after a
8      particular date for a fixed or determinable amount, is a
       financial liability.
9
10 (Birnbach Decl. Ex. 17 (IAS 32) ¶ 18(a)).  Under FASB Concepts
11 Statement 6, "liabilities are claims to the entity's assets by
12 other entities and, once incurred, involve nondiscretionary
13 future sacrifices of assets that must be satisfied on demand, at
14 a specified or determinable date, or on occurrence of a specified
15 event."   (Birnbach Decl. Ex. 21 (FASB Concept 6) ¶ 54).
16           Neither of these principles require the court to find
17 the Series B shares to be classified as a liability.
18 Preliminarily, the court again notes the balance sheet itself
19 does not classify the Series B shares as part of the "Total
20 liabilities."  Further, the standards set forth by the IASB do
21 not comprise the "auditing standards generally accepted in the
22 United States" where they are in conflict with the principles
23 issued by the FASB.  The FASB explicitly states in FAS 150 that
24 IAS 32 does not comprise the generally accepted accounting
25 principles in the United States:
26     IAS 32 requires that preferred shares be classified as a
       liability if the holder can choose to require redemption,
27     even if redemption is uncertain.  <u>In contrast, under this
       Statement, only shares</u> (whether common or preferred) <u>that
28     are mandatorily redeemable (upon a specified date,</u>

12

<u>determinable date, or event certain to occur) are classified as a liability</u>.

(Rogers Decl. Ex. C (FAS 150) ¶ B78)(emphasis added). The FASB is a more reliable source to reference in determining the generally accepted accounting principles of the United States than the IASB. See <u>Rosenberg v. Carlin</u>, No. 902516A, 1994 WL 879765, at *2 (Mass. Super. Ct. May 11, 1994)("Application of GAAP requires reference to the Current Text of the Financial Accounting Standards Board"). In <u>Rumsfeld v. United Technologies Corporation</u>, the Federal Circuit applied the "GAAP hierarchy":

> GAAP comprises a hierarchy of different sources . . . [The] Statement on Auditing Standards (SAS) No. 69, issued by the Auditing Standards Board of the American Institute of Certified Public Accountants (AICPA) in 1992, defines the most authoritative pronouncements (i.e., <u>the top level</u>) of the GAAP hierarchy as 'Established Accounting Principles.' These include <u>Financial Accounting Standards Board (FASB) Statements and Interpretations</u> . . . At the <u>lower level</u> in the GAAP hierarchy is "Other Accounting Literature," which includes such things as . . . <u>International Accounting Standards Committee Statements</u>, accounting textbooks, etc.

315 F.3d 1361, 1374 n.17 (Fed. Cir. 2003)(emphasis added).

In accordance with the GAAP hierarchy, FAS 150 controls. Under FAS 150, since the Series B shares are not mandatorily redeemable but are instead only convertible upon an event not certain to occur, they need not be classified as liabilities.[4]

---

[4] Defendant might argue that a "deemed liquidation" is an event certain to occur at some point in the future. As a practical matter, most corporations will, at some point, merge with others or sell substantially all of their assets. However, this argument proves too much. If the "event certain to occur" referenced in FAS 150 were meant to be interpreted in a philosophical sense, then no shares could ever be listed as equity because almost every corporation will cease existing at some point and the shareholders at that point will be entitled to their share of assets upon that corporation's dissolution.

1        At first glance, FASB Concept 6 appears to contradict
2   FAS 150 and support defendant's position that Series B shares be
3   classified as a liability because defendant will have to
4   sacrifice assets upon the occurrence of a specified event.
5   However, in a subsequent clarification of Concept 6, the FASB
6   issued Action Alert No. 04-08 stating that liabilities under
7   Concept 6 include obligations to "redeem equity instruments if
8   those obligations . . . do <u>not</u> convey an ownership relationship."
9   Financial Accounting Standards Board, Action Alert No. 04-08
10  (Feb. 26, 2004), <u>available</u> <u>at</u>
11  http://www.fasb.org/action/aa022604pf.html(emphasis added).
12  Series B shareholders have voting rights and are entitled to
13  dividends.  (Braunstein Decl. Ex. 1 (audit and financial
14  statements) at 11-12).  Therefore, Series B shareholders have
15  ownership rights and the Series B shares are not appropriately
16  classified as liabilities under FASB Concepts Statement 6.  <u>See</u>
17  <u>C.I.R. v. Fink</u>, 483 U.S. 89, 95 (1987)(shares in company
18  conferred "ownership interest entitling [respondents] to future
19  dividends, future capital appreciation, assets in the event of
20  liquidation, and voting rights").

21        3. <u>Defendant's argument that SEC regulations require</u>
22  <u>Series B shares to be listed separately from other shares</u>

23        Defendant's next argument is that a securities
24  regulation requires the convertible shares to be indicated on the
25  balance sheet separately from common stock, non-redeemable
26  preferred stocks, and "other stockholders' equity."  <u>See</u> 17

14

1  C.F.R. § 210.5-02.28-31 (2001).[5]

2         This argument is a misdirection.  The court is not
3  called upon to determine the amount of "permanent equity," but
4  instead must determine the "net worth" of defendant. Nowhere in
5  the cited regulations is "net worth" equated with "permanent
6  equity," "common stock," or "non-redeemable preferred stocks,"
7  nor is "net worth" defined to <u>exclude</u> convertible shares.  The
8  regulatory requirement that convertible shares be listed
9  separately from common stock and non-redeemable preferred stock
10 does not dissuade the court from the common sense determination
11 that net worth is computed by subtracting total liabilities from
12 total assets.

13        In sum, the balance sheet, which was prepared using
14 generally accepted accounting principles, shows that defendant
15 had a net worth of greater than $5,000,000 on December 31, 2001.

16     C. <u>Other Pending Motions</u>

17        Defendant's motion to exclude the testimony of
18 plaintiff's expert Jeffrey Rogers is moot because the court does
19 not rely on that testimony.  Defendant's motions to strike
20 plaintiff's jury demand and to strike portions of plaintiff's
21 statement of undisputed facts are also moot.
22 ///

---

[5] Defendant characterizes every other type of stock besides convertible shares as "permanent equity," but this term is not to be found in the regulations cited.  The term "permanent equity" is found in Emerging Issues Task Force ("EITF") document D-98 issued by the Securities and Exchange Commission staff. EITF D-98, entitled "Classification and Measurement of Redeemable Securities," merely affirms that convertible shares are to be listed separately from other types of shares.  Nowhere does EITF D-98 state that convertible shares are not to be counted towards "net worth" or total equity.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment be, and the same hereby is, GRANTED;

AND IT IS FURTHER ORDERED that defendant's motion for summary judgment be, and the same hereby is, DENIED;

Judgment shall be entered DECLARING the net worth of defendant Merrimack Pharmeceuticals, Inc. to be greater than $5,000,000 as of December 31, 2001.

DATED: June 17, 2005

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE