UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ALBERT D. BOLT,

        Plaintiff,

    v.

MERRIMACK PHARMACEUTICALS,
INC.,

        Defendant.

NO. CIV. S-04-0893 WBS DAD

MEMORANDUM AND ORDER RE:
DEFENDANT'S MOTION TO STAY AND
PLAINTIFF'S MOTION FOR FURTHER
RELIEF

----oo0oo----

       Defendant Merrimack Pharmaceuticals, Inc. moves to stay
execution of judgment pending appeal of the court's declaratory
judgment establishing the net worth of defendant as of December
31, 2001.  Plaintiff Albert D. Bolt moves for further relief
based on the same declaratory judgment, pursuant to the
Declaratory Judgment Act, 28 U.S.C. § 2202.  Plaintiff requests
$10 per share for each of his redeemable 52,488 Series A shares
plus prejudgment interest accruing from June 28, 2002.

///

1

I.    <u>Factual and Procedural Background</u>

On March 28, 2002, plaintiff, the owner of 52,488 shares of defendant's Series A Non-Convertible Preferred Stock, requested redemption of his shares pursuant to the terms and conditions of the stock.  (Pl.'s Mot. for Summ. J. Attach. 5 (Bolt Decl. ¶¶ 2-3)).  These terms provide a right of redemption at $10 per share if defendant's net worth equals or exceeds $5,000,000.  (Warne Decl. Ex. G (Description of Capital Stock ¶¶ B5.2, B5.3)).  Defendant denied plaintiff's redemption request, claiming a negative net worth of $2,400,000.  (<u>Id.</u> (Fishkin Letter)).

Plaintiff then filed suit in federal court on diversity grounds asking the court to declare, as a matter of law, that defendant's net worth on December 31, 2001 exceeded $5,000,000.  (June 17, 2005 Summ. J. Order at 1).  Faced with what was essentially a contract interpretation case, the court applied Massachusetts state law, which was appropriate because defendant is a corporation formed under the laws of that state.  (<u>Id.</u> at 6-7).  The real substance of the dispute focused almost entirely on how to define the term "net worth," with both sides calling upon a variety of accounting standards in support of their positions.  (<u>Id.</u> at 8-14).  After a lengthy analysis of the proposed standards, the court held that plaintiff's definition was more consistent with prevailing law and awarded summary judgement in favor of plaintiff.  The court's order declared that defendant's net worth exceeded $5,000,000 as of December 31, 2001.  (<u>Id.</u> at 16).

Following this judgment, plaintiff asked defendant, in

2

a letter dated June 22, 2005, to redeem plaintiff's 52,488 shares at $10 per share for a total of $524,880.  (Pl.'s Mot. for Further Relief Ex. A).  Plaintiff also requested $187,849.52 in prejudgment interest, accumulated from June 28, 2002 at a rate of twelve percent (based on Massachusetts law).  (Id.).  Defendant responded, in a letter dated June 23, 2005, that plaintiff's request for payment was premature pursuant to Federal Rule of Civil Procedure 62(a) and again refused plaintiff's redemption request, citing its intent to file an appeal and motion to stay enforcement of the court's declaratory judgment.  (Id. Ex. B). Defendant also questioned plaintiff's assertion that Massachusetts law controlled the prejudgment interest rate. (Id.).

On June 27, 2005, defendant notified the court that it had filed an appeal of the declaratory judgment with the Ninth Circuit.  (Def.'s Notice of Appeal at 1).  That same day, defendant also filed a motion to stay execution of judgment pending appeal, requesting that the court grant a stay without requiring defendant to post a bond.  (Def.'s Mot. To Stay at 5). Plaintiff followed on June 28, 2005 with a motion for further relief pursuant to 28 U.S.C. § 2202, asking the court to award the amount in damages specified in its June 22 letter to defendant, plus interest.  (Pl.'s Mot. for Further Relief at 7). The parties agreed to a joint hearing for resolution of both motions, which was scheduled for September 19, 2005.

1    (Stipulation for Consolidation of Hearings at 2).[1]

2    II.   Discussion

3          A.   Defendant's Motion to Stay

4                1.   Legal Standard

5    _____With a few specified exceptions, Federal Rule of Civil

6    Procedure 62(a) provides an automatic stay of ten days following

7    judgment.  Fed. R. Civ. P. 62(a).  If a decision is appealed, the

8    party hoping to further stay execution of judgment may file a

9    supersedeas bond, Fed. R. Civ. P. 62(d), or move for a stay of

10   execution without a bond, Fed. R. App. P. 8(a)-(b).[2]  While

11   parties have a right to a stay obtained through a supersedeas

12   bond, an unsecured stay is reserved for "unusual circumstances"

13   and awarded at the district court's discretion.  Fed.

14   Prescription Serv., Inc. v. Am. Pharm. Ass'n, 636 F.2d 755,

15   760-61 (D.C. Cir. 1980); SIBIA Neurosciences, Inc., v. Cadus

16   Pharm. Corp., No. 96-1231, 1999 WL 33554683, at *4 (S.D. Cal.

17   Mar. 10, 1999).  The parties do not appear to dispute these

18   settled principles.

19                As an initial matter, the parties also seem to agree,

20

21        [1] Concurrent with these events, plaintiff filed a Motion for
     Costs on June 24 and was awarded $4,4454.77 by the court.  (Aug.
22   15, 2005 Order Re: Costs at 4).

23        [2] Support for the district court's power to award stays
     without bonds comes from an interpretation of Federal Rule of
24   Appellate Procedure 8.  Subsection (a) directs parties to
     initiate a motion to stay in district court and subsection (b)
25   "implicitly recognizes the discretion of the appellate courts to
     issue stays not conditioned on bond."  Fed. Prescription Serv.,
26   636 F.2d at 760.  Taken together, these provisions give the
     district court power to grant unsecured stays.  Id. ("It would
27   make little sense to require an appellant who could qualify for
     an unsecured stay from the appellate court to apply for it first
28   in the district court . . . if Rule 62(d) . . . denied the
     district court the power to approve such a stay.").

as does the court, that the declaratory judgment in this case, which laid the foundation for plaintiff's right to redeem his stock, is more akin to a money judgement rather than injunctive relief.[3] See J. Perez & Cia., Inc. v. United States, 747 F.2d 813, 814 (1st Cir. 1984) (defining money judgments as judgments where "the value . . . can be calculated and secured with relative ease"); Hebert v. Exxon Corp., 953 F.2d 936, 937-38 (5th Cir. 1992) (classifying a declaratory judgment against an insurer as a de facto money judgment because it essentially bound insurer to pay once it found coverage).  This fact is worth mentioning because whether the court granted injunctive or monetary relief is significant in a motion to stay in light of an appeal.  The Federal Rules of Civil Procedure impose distinct standards for stays of judgments involving injunctions, see Fed. R. Civ. P. 62(c), and stays of other judgments, see Fed. R. Civ. P. 62(d). See also Perez, 747 F.2d at 814 (identifying subsection (d) as "likely aimed at money judgments" and subsection (c) as applicable to "a case involving an order to do, or not to do, something").  Given these distinctions, it should come as no surprise that courts evaluate unsecured stays of these categories

---

[3] Defendant has declared its intent "to file a supersedeas bond . . . pursuant to [Rule] 62(d)" if the court denies this motion to stay.  (Def.'s Opp'n to Pl.'s Mot. for Further Relief at 3).  Additionally, defendant has argued that the ten day automatic stay granted under Rule 62(a), unavailable in injunction cases, applies to this case.  (Id. at 2).  The court takes these statements as evidence that defendant understands this is not a case involving injunctive relief.  Likewise, because plaintiff has requested that the court order defendant to pay, an assumption that he, too, sees this as a money judgment case is not unwarranted.

1    of judgments under different tests.[4]  Although the court could not

2    find a single case straightforwardly acknowledging the existence

3    of two separate tests, an examination of the case law clearly

4    reveals a different method of analysis applicable to motions for

5    unsecured stays when Rule 62(d), rather than Rule 62(c), applies.

6            Defendant argues that the Ninth Circuit analyzes a

7    motion for an unsecured stay of execution of judgment pending

8    appeal under the framework for evaluating a preliminary

9    injunction.  (Def.'s Mot. for Stay at 2).  At first glance, its

10   support for this argument certainly seems convincing.  The Ninth

11   Circuit has stated that "[t]he standard for evaluating stays

12   pending appeal is similar to that employed by district courts in

13   deciding whether to grant a preliminary injunction."  Lopez v.

14   Heckler, 713 F.2d 1432, 1435 (9th Cir. 1983) (citation omitted).

15   However, in formulating its argument, defendant took cases

16   supporting its preliminary injunction standard out of context and

17   in doing so distorted the applicable legal standard.  As

18   plaintiff noted, "[a]ll of the cases cited by [defendant] in

19   support of using the preliminary injunction standard are

20   distinguishable from this case because they involve requests for

21   stays in the context of appeals involving injunctive relief."

22   (Pl.'s Opp'n to Def.'s Mot. to Stay at 7 n.4).  The court agrees.

23   Defendant may very well have identified the appropriate standard

24

25          [4] Moreover, common sense would suggest that while the
     preliminary injunction test may aid a court in determining
26   whether to stay an injunction pending appeal, the test's
     applicability in a motion to stay a money judgment is
27   questionable, given the different nature of the relief being
     postponed.
28

for evaluating a motion to stay injunctive relief pending appeal.[5]
However, this test is irrelevant in a case controlled by Rule
62(d).

Courts addressing a motion for an unsecured stay under
Rule 62(d) have expressed a willingness to grant such requests
when: (1) "defendant's ability to pay is so plain that the cost
of the bond would be a waste of money" or (2) "the requirement
would put the defendant's other creditors in undue jeopardy" (in
other words, the requirement is impracticable because it would,
for example, force appellant into bankruptcy or paralyze the
business). Olympia Equip. v. W. Union Tel. Co., 786 F.2d 794,
796 (7th Cir. 1986); Brooktree Corp. v. Advanced Micro Devices,
Inc., 757 F. Supp. 1101, 1104 (S.D. Cal. 1990); see also Miami
Int'l Realty Co. v. Paynter, 807 F.2d 871, 873 (10th Cir. 1986)
(looking instead at whether (1) "there is a showing that the
prevailing party's judgment will not be jeopardized" or (2) "a
[full] bond is impracticable [and other] adequate security is
provided"). Under either approach, the burden is on the
appellant to demonstrate the reasons for "depart[ing] from the
usual requirement of a full security supersedeas bond." Poplar
Grove Planting & Refining Co. v. Bache Halsey Stuart, Inc., 600
F.2d 1189, 1190 (5th Cir. 1979); United States v. Kurtz, 528 F.

---

[5] Because the court has determined that the preliminary
injunction test is inapplicable here, it has not investigated the
merits of whether, rather than applying the three (sometimes four
part Hilton test, the Ninth Circuit applies a "slightly
different" two-part test "for staying an injunction, pursuant to
Rule 62(c)." Pajaro Dunes Rental Agency, Inc. v. Pajaro Dunes
Ass'n, No. C-97-2516, 2002 WL 202412, at *6 (N.D. Cal. Feb. 5,
2002) (distinguishing Hilton v. Braunskill, 481 U.S. 770, 776
(1987)).

Supp. 1113, 1115 (E.D. Pa. 1981) ("It is the appellant's burden to demonstrate objectively that posting a full bond is impossible or impractical . . . ."). Additionally, even if an appellant persuades the court that a full bond is unnecessary, the court typically requires a substitute form of judgment guarantee. See Olympia Equip., 786 F.2d at 796 (noting that both defendants with a clear ability to pay and those who would be bankrupted by a bond requirement are "candidate[s] for alternative security"); SIBIA Neurosciences, 1999 WL 33554683 at *4.

　　　　　2.　A Stay Without Bond Is Not Warranted

　　　　　Given the evidence presented, the court fails to see how defendant might qualify for a stay under either the clear ability to pay or impracticability standards. Defendant argues that it recently raised capital well in excess of the amount needed to satisfy plaintiff's claims, (Def.'s Reply in Supp. of Mot. to Stay at 3), and in the same breath admits that these funds are already slated for use in product development. (Id., see also Scibetta Decl. at 1 ("Merrimack utilizes almost all of its resources and financing to develop and commercialize a product . . . .")). By its own admissions, defendant is not a liquid company that can respond quickly to a judgment against it. Moreover, unlike the appellants in Federal Prescription Service, who had a documented net worth of "about 47 times the amount of the damage award," defendant's entire appeal is based on a claim that its net worth has never surpassed the $5,000,000 redemption-triggering mark. Finally, although "the inherently volatile nature of . . . the industry" might not be determinative, see Brooktree Corp., 757 F. Supp. at 1104, the court in this case

1  cannot say with certainty that allowing an unsecured stay will

2  not jeopardize plaintiff's recovery.  The financial health of a

3  company developing a "potential breakthrough" drug that is still

4  in a "crucial" stage of development is anything but certain.

5  (See Scibetta Decl. at 2).

6  _____Other than defendant's conclusory statement that

7  requiring a bond at this time would cause defendant financial

8  hardship, it has failed to produce evidence of impracticability.

9  Defendant does not claim that it will face bankruptcy,

10  jeopardizing its other creditors, if a bond is required.  Quite

11  the contrary, it has expressed its intent to immediately file a

12  supersedeas bond if the court denies this motion for an unsecured

13  stay.  (Def.'s Opp'n to Pl.'s Mot. for Further Relief at 3).

14  Defendant's desire to continue business as usual is

15  understandable, but it conflicts with plaintiff's right to

16  promptly enjoy the benefits of his judgment.  The court, in its

17  discretion, certainly could entertain a form of security other

18  than a supersedeas bond.  See, e.g., Trans World Airlines v.

19  Hughes, 515 F.2d 173, 175-76 (2d Cir. 1975) (allowing defendant,

20  in a case awarding plaintiff over $145 million, to post a partial

21  bond of $75 million and provide regular evidence of net worth

22  greater than three times the balance owed--an arrangement that

23  freed defendant to pursue other business opportunities pending

24  appeal).  However, because defendant bears the burden of

25  formulating an alternative plan, the court will not imagine one

26  of its own.

27  _____Defendant is thus not entitled to a stay without

28  posting supersedeas bond.  In the event that defendant does

9

1  follow through with its pledge to file such a bond to stay

2  execution of judgment, the bond must be in the full amount of the

3  judgment, as described below, unless defendant proposes some

4  other form of surety acceptable to the court.

5       B.   Plaintiff's Motion for Further Relief

6            1.   The Court's Authority to Hear Plaintiff's Motion

7            Although an appeal typically divests the district court

8  of jurisdiction over a matter, a motion for further relief under

9  28 U.S.C. § 2202 is a logical exception to this rule.  Horn &

10 Hadart Co. v. Nat'l Rail Passenger Corp., 843 F.2d 546, 548 (D.C.

11 Cir. 1988) ("When a party files a notice of appeal the district

12 court only surrenders 'its control over those aspects of the case

13 involved in the appeal.'" (emphasis added)).  The Declaratory

14 Judgment Act "clearly anticipate[s] ancillary or subsequent

15 coercion to make an original declaratory judgment effective."

16 Id.  To bar district courts from considering further relief

17 pending appeal "would allow the party against whom a declaratory

18 judgment is rendered to nullify her adversary's right to § 2202

19 relief merely by lodging an appeal."  Id.  Moreover, recognizing

20 the district court's power to consider a motion for further

21 relief in this case will provide the appellate court with a more

22 complete case for review as it will further define the parties'

23 rights and liabilities.  Judicial economy is actually better

24 served when the district court entertains such motions pending

25 appeal.  The court will therefore fully consider plaintiff's

26 motion for further relief.

27 ///

28 ///

1              2.  <u>Timeliness of Plaintiff's Motion</u>

2          As an initial matter, defendant objects to plaintiff's

3    motion for further relief under 28 U.S.C. § 2202 because,

4    according to defendant, it was filed within the ten day automatic

5    stay of execution of judgment provided by Rule 62(a).  In the

6    part relevant to a stay of a money judgment, the rule states: "no

7    execution shall issue upon a judgment nor shall proceedings be

8    taken for its enforcement until the expiration of 10 days after

9    its entry."  Fed. R. Civ. P. 62(a).  The court issued its

10   declaratory judgment on June 17, 2005 and plaintiff filed for

11   further relief on June 28, 2005.  The motion thus facially

12   appears to have been timely.  However when read in light of Rule

13   6(a), as defendant proposes, the motion was actually premature.

14   Rule 6(a) states: "In computing any period of time prescribed or

15   allowed by these rules, . . . [w]hen the period of time

16   prescribed or allowed is less than 11 days, intermediate

17   Saturdays, Sundays, and legal holidays shall be excluded in the

18   computation."  Because plaintiff does not contest defendant's

19   interpretation of the applicable time period, the court accepts

20   defendant's argument that the stay was in effect in this case

21   until July 1, 2005.  <u>See also</u> <u>KRW Sales, Inc., v. Kristel Corp.</u>,

22   154 F.R.D. 186, 188 (N.D. Ill. 1994) (holding, as a matter of

23   first impression, that the ten day automatic stay under Rule

24   62(a) excludes weekends and holidays).

25         In response, plaintiff argues that filing his motion

26   "does not constitute a 'proceeding[] taken for [the judgment's]

27   enforcement'" and therefore his motion was not at odds with Rule

28   62(a).  (Reply Br. in Supp. of Pl.'s Mot. for Further Relief at

                              11

1  3) (alterations in original)).  The court disagrees, noting that

2  a "proceeding" includes "all motions made in the action."

3  Black's Law Dictionary (8th ed. 2004).  However, because the

4  court finds that defendant was not prejudiced by plaintiff's

5  filing of its motion just one day early,[6] the court will consider

6  further relief.  Defendant did not pursue a stay as of right by

7  filing a supersedeas bond with the district court, and thus

8  plaintiff was free to file its motion on July 1 when the

9  automatic stay lifted.  Defendant's position was unaltered by

10 plaintiff's motion.  See In re Vanden Bossche, 125 B.R. 571,

11 (N.D. Cal. 1991) (permitting the recordation of a judgment lien

12 during the automatic stay period under Rule 62(a) because "a

13 judgment lien does not deprive the judgment debtor of his

14 property").  Furthermore, even if defendant had filed a bond, the

15 court would still have needed to determine the value of

16 plaintiff's claim to evaluate the adequacy of the bond.

17 Resolution of the value of plaintiff's judgment appears to be an

18 inescapable duty of this court that will at least provide the

19 Ninth Circuit with a more complete case for review and facilitate

20 a more timely resolution of this case.

21           3.   Plaintiff's Further Relief

22           The Declaratory Judgment Act, under which plaintiff

23 prays for further relief provides that "[f]urther necessary or

24 proper relief based on a declaratory judgment or decree may be

25 _____

26      [6] Although defendant claims that the motion was three days
   premature, the court thinks it only fair to not count holidays
27 and weekends in assessing the timeliness of an action when the
   applicable period does not take into account holidays and
28 weekends.

granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202. As previously noted, the district court has jurisdiction to consider a motion for further relief, pursued to establish the full benefit of a declaratory judgment, even though defendant has appealed the underlying action. <u>United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.</u>, 414 F.3d 558, 572 (5th Cir. 2005); <u>Horn & Hadart Co.</u>, 843 F.2d at 548. The court is therefore capable of entertaining plaintiff's request.

Defendant does not appear to dispute the amount owed to plaintiff in exchange for his stock, assuming the court's declaratory judgment withstands appeal. Having determined in its summary judgment order that the triggering factor for plaintiff's right of redemption occurred during the relevant time period, the court now holds that defendant was obligated to pay plaintiff $524,880 in exchange for his Series A shares according to the terms of these shares.

The calculation of prejudgment interest is a more complex matter. Defendant vociferously objects to plaintiff's arguments regarding the applicable rate for prejudgment interest. In the underlying action for declaratory judgment, the court applied Massachusetts contract law to determine defendant's obligations to plaintiff, as laid out in defendant's own "Description of Capital Stock". (June 17, 2005 Summ. J. Order at 2, 6). Invoking the principle of dépeçage, however, defendant claims that California law, the law of plaintiff's domicile, and not Massachusetts law, should apply to a calculation of prejudgment interest. (Def.'s Opp'n to Pl.'s Mot. for Further

1  Relief).  California law would impose a lower interest rate.

2         Dépeçage is a curious invention of the courts that

3  "erects a framework under which issues in a single case, arising

4  out of a common nucleus of operative facts, may be decided

5  according to the substantive law of different states."  <u>See</u>

6  <u>Putnam Res. v. Pateman</u>, 958 F.2d 448, 465 (1st Cir. 1992) (citing

7  <u>Hutner v. Greene</u>, 734 F.2d 896, 901 (2d Cir. 1984) and <u>Broome v.</u>

8  <u>Antlers' Hunting Club</u>, 595 F.2d 921, 923 n.5 (3d Cir. 1979)).  It

9  arises in diversity cases when the court must engage in a choice

10  of law analysis.  Under this principle, the law governing

11  liability does not necessarily apply to other issues in a case,

12  such as damages and attorneys' fees.  <u>See, e.g.</u>, <u>Arno v. Club Med</u>

13  <u>Boutique, Inc.</u>, 134 F.3d 1424 (9th Cir. 1998) (applying

14  California law to attorneys' fees even though French law governed

15  the underlying tort dispute).  The court instead conducts "a

16  separate choice-of-law inquiry . . . with respect to each issue

17  in a case."  <u>S.A. Empresa De Viacao Aerea Rio Grandense v. Boeing</u>

18  <u>Co.</u>, 641 F.2d 746, 749 (9th Cir. 1981).

19         The court questions whether the case at hand lends

20  itself to a suitable application of dépeçage.  The Tenth Circuit

21  has cast doubt on whether prejudgment interest is a stand alone

22  issue capable of a choice of law analysis independent from the

23  damages award.  <u>Johnson v. Continental Airlines Corp.</u>, 964 F.2d

24  1059, 1064 (10th Cir. 1992) (affirming the concept of dépeçage

25  but finding its application inappropriate where a choice of law

26  determination was already made regarding compensatory damages;

27  the issues were not severable).  Likewise, the use of one law to

28  calculate damages and another to calculate interest <u>on those</u>

14

1  damages does not seem justified here.  See also id. (holding that

2  dépeçage "is inappropriate when used to fragment issues related

3  to a common purpose").  However, the question turns out to be a

4  moot one here because, as discussed in the paragraphs below, the

5  court eventually concludes that Massachusetts law applies

6  regardless of whether dépeçage is applied or not.

7         Although dépeçage is not a universally accepted

8  principle and has not been explicitly adopted by the California

9  Supreme Court, the concept behind it, that "a separate conflict

10 of laws inquiry must be made with respect to each issue in the

11 case," is found in California law.  Wash. Mutual Bank, FA v.

12 Superior Court, 15 P.3d 1071, 1081 (Cal. 2001); see also Reyno v.

13 Piper Aircraft Co., 630 F.2d 149, 167 (3d Cir. 1980) (applying

14 dépeçage in a case controlled by California law based on the

15 court's belief that the California Supreme Court had implicitly

16 adopted this approach).  This bears on the issue of what

17 prejudgment interest rate to apply because in a diversity case, a

18 federal court applies the choice of law principles of the state

19 in which it sits for substantive matters of law.  Klaxon v.

20 Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  Prejudgment

21 interest is a component of substantive damages and, in a

22 diversity case, is calculated using the rate determined by state

23 law.  Northrop Corp. v. Triad Int'l Mktg., S.A., 842 F.2d 1154

24 (9th Cir. 1988); Turner v. Japan Lines Ltd., 702 F.2d 752 (9th

25 Cir. 1983).  Therefore, because this case was brought in the

26 Eastern District of California, California choice of law rules,

27 which appear to recognize the principle of dépeçage, govern

28 substantive matters, including awards of prejudgment interest.

15

Accordingly, the court undertakes a separate choice of law analysis to determine which state law, California or Massachusetts, to apply in calculating prejudgment interest.

California takes the "governmental interest analysis" approach to choice of law questions. Reich v. Purcell, 432 P.2d 727 (Cal. 1967). At its core, the test involves "an analysis of the respective interests of the states involved . . . the objective of which is 'to determine the law that most appropriately applies to the issue involved.'" Hurtado v. Superior Court, 522 P.2d 666, 669 (Cal. 1974) (quoting Reich, 432 P.2d at 730). The Ninth Circuit, however, has adopted a more structured approach to California choice of law questions that: (1) looks at "whether the foreign state law actually differs from the law of California", (2) "consider[s] each state's interest in having its own law applied to [the] case to determine whether there is a 'true conflict'", and (3) "compare[s] the extent to which each state's interests will be impaired if the other state's law is applied. Darulis v. Garate, 401 F.3d 1060, 1062 (9th Cir. 2005).

In this case, Massachusetts and California law do differ, with Massachusetts law calculating prejudgment interest at twelve percent and California at ten percent.[7] Mass. Gen. Laws ch. 231, § 6C (entitled "Interest added to damages in contract

_____

[7] Defendant argues for a rate of seven percent under California law, based on a provision in the California Constitution governing usury. Cal. Const. art. XV, § 1. The court rejects defendant's suggestion that prejudgment interest, a part of plaintiff's compensatory damages, can be classified as a loan. The constitutional provision cited does not apply to this case.

actions"); Cal. Civ. Code § 3289 (entitled "Rate of interest chargeable after breach of contract").  Although a two percent difference might be insubstantial in some instances, plaintiff's ultimate award for a judgment valued at $524,880 dating back to June 28, 2002, will be significantly different depending on what law is applied.  Because the state laws are substantially different, the interests of each state must be weighed by the court.

Defendant cites In re Pago Pago Aircrash of Jan. 30, 1974, 525 F. Supp. 1007 (C.D. Cal. 1981), for the proposition that "the jurisdiction with the greatest interest in defining when an injured person has been fully compensated is the jurisdiction in which the person is domiciled." (Def.'s Opp'n to Pl.'s Mot. for Further Relief at 4).  However, In re Pago Pago was a tort case and while the states where victims are domiciled might have a weightier interest in ensuring that their citizens are fully compensated for unforeseen physical injuries suffered in a foreign state, the court finds the situation here readily distinguishable.[8]

This case involves a corporation and its contractual obligations to a shareholder, as laid out in corporate documents defining the entity's stock structure.  Massachusetts has a

---

[8] Additionally, the court finds another glaring distinction between the case at hand and In re Pago Pago in the subsequent lines of the same paragraph that defendant has so selectively cited: the court had already applied the general damage law of the jurisdiction in which each victim is/was domiciled.  In re Pago Pago, 525 F. Supp. at 1010. In wrapping up its analysis, the court noted that "[i]t is most consistent with that ruling [regarding general damages] that [the] same law control the determination of prejudgment interest . . . ." Id.

substantial interest in ensuring that its corporations, creatures

of state creation, promptly fulfill their contractual obligations

to investors.  Recognizing the uniqueness of this relationship

between a corporation and the state, the Supreme Court has

provided a rule that obviates the need to undertake choice of law

analysis when adjudicating the rights of parties under articles

of incorporation and by-laws.  The law of the state of

incorporation controls.  Order of United Commercial Travelers of

Am. v. Wolfe, 331 U.S. 586, 614 (1947) (relied on in the court's

underlying declaratory judgment).  Similarly, the court finds

that Massachusetts has an important interest in regulating the

conduct of state-created corporations, an interest that outweighs

any interest California may have in the compensation awarded in a

contracts dispute between its citizen and a foreign party.  The

high Massachusetts prejudgment interest rate may encourage timely

resolutions of disputes and boost investor confidence in

Massachusetts corporations.  Therefore, Massachusetts law applies

to the calculation of prejudgment interest.

        At oral argument, defendant raised for the first time

the possibility that prejudgment interest might accrue only from

the date of breach until the date of the declaratory judgment.

Defendant cited Northrop Corp. v. Triad International Marketing

and argued that the Ninth Circuit has stated that prejudgment

interest runs only until the first judgment ascertaining damages.

842 F.2d at 1156 (holding that postjudgment interest, calculated

18

according to 28 U.S.C. § 1961[9] in diversity cases, runs from the date of the underlying judgment, rather than the date of an order enforcing an arbitration award). However, defendant failed to mention that in American Telephone & Telegraph Co. v. United Computer Sys., Inc., the court rejected the proposition that "§ 1961 requires postjudgment interest to be calculated from the first judgment in which the damages are sufficiently ascertained." 98 F.3d 1206, 1210 (9th Cir. 1996). The AT&T court based its decision, which awarded prejudgment interest up to the date of the second enforcement order, on two grounds: (1) the delay between the first judgment and an enforceable judgment was the fault of the party arguing for application of the postjudgment interest rate and (2) the prejudgment interest rate under state law more fully compensated the prevailing party for its inability to enjoy its money judgment. Id. at 1211.

In this case, as in AT&T, "the postjudgment interest rate is less than the prejudgment interest rate, and it is the losing party who asks that postjudgment interest begin at the time of the initial judgment . . . ." Id. at 1210. Compare Mass. Gen. Laws ch. 231, § 6C (setting the state law prejudgment interest rate at twelve percent), with Federal Reserve, http://www.federalreserve.gov/releases/H15/data/wf/tcm1y.txt (documenting the applicable postjudgment interest rate at the time of this court's declaratory judgment order: 3.30%).

---

[9] Section 1961(a) allows interest "on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding.

1  Likewise, defendant's behavior is, at least in part, the cause of

2  the delay between the first judgment in this case and this order

3  specifying damages.  At oral argument, counsel for plaintiff

4  confessed that his hope that a declaratory judgment would be

5  enough to secure payment from defendant motivated his decision to

6  separately petition the court for a declaration of his rights and

7  an order for payment.  Defendant has not been as cooperative as

8  plaintiff had hoped.  Therefore, the court finds that, under

9  these circumstances, prejudgment interest should run from June

10 28, 2002 until September 20, 2005.

11 III. <u>Conclusion</u>

12         Defendant failed to demonstrate, to the court's

13 satisfaction, that a grant of an unsecured stay would not

14 jeopardize plaintiff's chances of recovery.  As a result, in the

15 absence of a stay, the court was free to rule on plaintiff's

16 motion for further relief.[10]  For the reasons discussed above, the

17 court grants the relief sought.

18         IT IS THEREFORE ORDERED that defendant's motion for

19 stay without bond be, and hereby is, DENIED.

20         IT IS FURTHER ORDERED that plaintiff's motion for

21 further relief be, and hereby is, GRANTED.  The court determines

22 that plaintiff is entitled to $524,880 in exchange for his Series

23 A shares of defendant's stock plus prejudgment interest in the

24

---

25         [10] If defendant chooses to file a bond to obtain a stay as
   of right pursuant to Rule 62(d), it should consider Local Rule
26 65.1-151(d) in determining the appropriate amount for the bond.
   <u>See also</u> <u>SIBIA Neurosciences</u>, 1999 WL 33554683 at *5 ("Although
27 Rule 62(d) does not specify how large the security must be,
   courts have read Rule 62(d) to require that the security cover
28 costs and interest." (citing <u>Poplar Grove</u>, 600 F.2d at 1191)).

1  amount of $203,279.55, which accumulated at a rate of twelve

2  percent under Massachusetts law from June 28, 2002 until

3  September 20, 2005.

4  DATED:  September 20, 2005

5

6  _____

7  WILLIAM B. SHUBB
   UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28